**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | Case No. 1:15-cr-00175 (CRC) |
| **JOSEPH ANTHONY CAPUTO,** | |
| Defendant. | |

## MEMORANDUM OPINION

Federal law prohibits individuals from entering the White House grounds and other restricted areas without the lawful authority to do so.  The Government charged Joseph Caputo with violating a provision of this law, 18 U.S.C. § 1752(a)(1), after he hurdled one of the White House's perimeter fences and triggered a lockdown of the entire White House complex.  Caputo seeks dismissal of the sole charge against him.  He claims that his escapade constituted symbolic speech because he scaled the White House fence to highlight flaws in our national security.  The unlawful entry statute, Caputo contends, thus violates the First Amendment both on its face and as applied to him.  Alternatively, Caputo argues that the statute is void for vagueness.  These arguments border on frivolous.  Section 1752(a)(1) is facially valid because it does not prohibit a substantial amount of protected speech.  There is, after all, no First Amendment right to express one's self in a nonpublic area like the White House.  Section 1752(a)(1) is also constitutional as applied to Caputo's actions, because the Government is entirely justified in prohibiting even symbolic breaches of White House security.  Finally, the statue is not unconstitutionally vague, as the unlawfulness of entering the White House grounds without permission is unambiguous to the average citizen.  The Court will therefore deny Caputo's motion to dismiss the Information.

## I.     Background

### A.     The November 26, 2015 Incident

Joseph Caputo climbed up and over the White House fence on Thanksgiving Day, 2015.

Secret Service officers rushed to stop his ascent but were unsuccessful.  Upon landing on the

North Lawn, the government alleges that Caputo ran toward the White House.  See Govt.'s

Opp'n Def.'s Mot. Dismiss 2-3 ("Govt.'s Opp'n").  Caputo insists that he immediately

surrendered upon scaling the fence.  See Def.'s Mot. Dismiss 1-2.  Caputo was swiftly

apprehended regardless, and the intrusion prompted a lockdown of the White House complex.

Govt.'s Opp'n 3.  At the time of his arrest, Caputo was wearing the American flag as a cape and

was carrying, among other things, a pocket Constitution.  See Def.'s Mot. Dismiss 2; Govt.'s

Opp'n 2.  He was unarmed.

### B.     18 U.S.C. § 1752(a)(1)

The Government subsequently filed a one-count Information charging Caputo under the

federal unlawful-entry statute, which imposes criminal penalties upon anyone who "knowingly

enters or remains in any restricted building or grounds without lawful authority to do so." 18

U.S.C. § 1752(a)(1).  The statute defines "restricted buildings or grounds" as "any posted,

cordoned off, or otherwise restricted area … of the White House or its grounds, or the Vice

President's official residence or its grounds." § 1752(c)(1)(A).  Restricted building or grounds

also include those "where the President or other person protected by the Secret Service is or will

be temporarily visiting" and those "so restricted in conjunction with an event designated as a

special event of national significance." § 1752(c)(1)(B); § 1752(c)(1)(C).  In other words, any

individual who unlawfully enters the White House grounds—or other restricted areas as defined in the statute—violates the statute.

### C.    Defendant's Motion to Dismiss

Caputo moved to dismiss the Information on June 6, 2016.  He argues that 18 U.S.C. § 1752(a)(1) violates the First Amendment—both on its face, and as applied to him.  Def.'s Mot. Dismiss 9, 15.  In support of his challenge, Caputo maintains that he breached the White House grounds with the "noble purpose" of "call[ing] attention to various deficiencies in the Constitution" and the Government's failure "to pay attention to domestic issues."  Id. 2.  These issues, he claims, are "demonstrated by the Government's inability to solve a seemingly simple problem, such as the height of the White House fence."  Id.  His caper was "inextricably linked" to the symbolic point he was making.  Id.

Invoking the overbreadth doctrine, he asserts that the statute "places a chilling and self-censorship effect on speech," id. at 12, and laments that "[t]he statute, by its very nature, would prevent all [White House] fence jumping protests seeking to illustrate that the fence was inadequate."  Def.'s Reply Govt.'s Opp'n 3.  Caputo also argues that the law is unconstitutional because it is a content-based regulation, and cannot survive the requisite level of judicial scrutiny.  Def.'s Mot. Dismiss 16.  Finally, Caputo claims the statute is void for vagueness under the Due Process Clause of the Fifth Amendment.  Id. at 13.

The Government responds that § 1752(a)(1) is valid because it regulates conduct, not speech.  See Govt.'s Opp'n 4.  But the Government asserts that even if Caputo's conduct includes both "nonspeech" and "speech" elements, the challenged statute is still justified by the Government's interest in protecting the President and the White House grounds.  Id. at 5-6.

Finally, the Government contests Caputo's claims that the statute is both content-based and void for vagueness. Id. at 7-8; 10.

## II.      Standard of Review

A criminal defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Pretrial motions may challenge "a defect in the indictment or information," as long as "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B). See, e.g., United States v. Bronstein, 151 F. Supp. 3d 31 (D.D.C. 2015) (reviewing a criminal defendant's motion to dismiss an indictment on First Amendment grounds).

## III.     Analysis

### A.      First Amendment Facial Challenge

Caputo argues that the unlawful entry statute is facially unconstitutional because it restricts too much protected speech. Def.'s Mot. Dismiss 9. A facial challenge to a statute is, generally, "the most difficult challenge to mount successfully." General Elec. Co. v. Jackson, 610 F.3d 110, 117 (D.C. Cir. 2010) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). The Supreme Court has not looked kindly upon overbreadth challenges, noting that "[f]acial challenges of this sort are especially to be discouraged." Sabri v. United States, 541 U.S. 600, 609 (2004). That said, free speech challenges present an exception to the normal rule concerning facial invalidity, under which a plaintiff must demonstrate that "no set of circumstances exists under which the [challenged statute] would be valid." Salerno, 481 U.S. at 745. Instead, "[under] First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a *substantial amount* of protected speech." Williams, 553 U.S. at 292 (emphasis added).

Caputo's facial challenge is easily dispensed with.  18 U.S.C. § 1752(a)(1) does not criminalize a substantial amount of protected speech.  In fact, it does not criminalize *any* amount of protected speech because there is no First Amendment right to express one's self in a nonpublic area like the White House.  In a nonpublic forum, an individual's right to expression is at its nadir.  A statute can restrict access to such a forum "as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."  Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46 (1983); see also U.S. Postal Service v. Greenburgh Civic Ass's., 453 U.S. 114, 129 (1981) ("[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government."); Greer v. Spock, 424 U.S. 828, 836 (1978) ("The guarantees of the First Amendment have never meant that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.") (internal quotations omitted).

The White House complex is a nonpublic forum—and unambiguously so.  To determine whether a forum is public or nonpublic, reviewing courts must "look[] to the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum."  Cornelius, 473 U.S. at 802.  The government has not engaged in any conduct that would suggest it has opened the White House grounds to public discourse.  Quite the opposite: the government has categorically barred unauthorized public access to the White House complex, and has even restricted speech on the public sidewalks surrounding it.  See, e.g., White House Vigil for ERA Committee v. Clark, 746 F.2d 1518 (D.C. Cir. 1984) (upholding regulations that restricted demonstrations and other activities on the sidewalk directly in front of the White House). Because the White House is a nonpublic forum,

there is no First Amendment right to access its grounds.  Accordingly, 18 U.S.C. § 1752(a)(1) does not prohibit any amount of expressive activity protected under the First Amendment, let alone a substantial amount.  The statute is therefore not facially overbroad.

As a regulation of a nonpublic forum, § 1752(a)(1) need only be reasonable and content neutral to be valid under the First Amendment.  <u>Perry</u>, 460 U.S. at 46.  The Court finds that the statute easily meets these two requirements.  First, the Government's prohibition of all unauthorized access to the White House is reasonable.  After all, "at stake is not merely the safety of one man, but also the ability of the executive branch to function in an orderly fashion and the capacity of the United States to respond to threats and crises affecting the entire free world."  <u>Clark</u>, 746 F.2d at 1528.  Second, the challenged statute is content neutral.  Under the Supreme Court's recent decision in <u>Reed v. Town of Gilbert</u>, a regulation is content neutral if it refrains from targeting a specific viewpoint or subject matter.  135 S. Ct. 2218, 2230 (2015) (expanding the definition of content-based regulation to include those that discriminate on the basis of subject matter, in addition to viewpoint).  Section 1752(a)(1) imposes criminal sanctions upon anyone who breaches a restricted area, without regard to the message the intruder seeks to express, or the subject matter he seeks to discuss.  The statute is clearly content neutral and reasonable, and therefore does not violate the First Amendment.

### B.  First Amendment As-Applied Challenge

Caputo also argues that 18 U.S.C. § 1752(a)(1) is unconstitutional as applied to him. Def.'s Mot. Dismiss 15.  For Caputo to prevail on an as-applied First Amendment challenge, he must demonstrate that the statute is unconstitutional as applied to his particular expressive activity.  <u>Edwards v. Dist. Of Columbia</u>, 755 F.3d 996, 1001 (D.C. Cir. 2014).  The Court must first assess whether Caputo's conduct is, in fact, expressive, and then determine whether the

challenged statute "is related to the suppression of free expression." Texas v. Johnson, 491 U.S.

397, 403 (1989) (assessing an as-applied challenge to a state flag-burning statute).  If the statute

is not related to expression, "then the less stringent standard [the Supreme Court] announced in

United States v. O'Brien for regulations of noncommunicative conduct controls." Id. (citing

United States v. O'Brien, 391 U.S. 367, 377 (1968)).

Caputo's act of jumping over the White House fence to, by his account, make a symbolic

point about flaws in White House security is expressive in nature.  To be sure, "[w]e cannot

accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever

the person engaging in the conduct intends thereby to express an idea." O'Brien, 391 U.S. at

376.  But the Supreme Court has "acknowledged that conduct may be 'sufficiently imbued with

elements of communication to fall within the scope of the First and Fourteenth Amendments.'"

Johnson, 491 U.S. at 404 (quoting Spence v. Washington, 418 U.S. 405, 409-411 (1974)).  The

target of Caputo's purported expression is the White House—the iconic seat of the executive

branch and an important subject in public discourse.  The act of unlawfully entering its grounds

is thus much more likely to be communicative in nature than other acts of trespassing, regardless

of the content of the message being expressed by the intruder.  See Snyder v. Phelps, 562 U.S.

443, 444 (2011) ("A statement's arguably inappropriate or controversial character … is

irrelevant to the question [of] whether it deals with a matter of public concern.") (internal

quotation omitted).

Even though Caputo's conduct is expressive, it does not follow that § 1752(a)(1) is

unconstitutional.  Since the statute is not related to the suppression of free expression, the Court

need only review Caputo's as-applied challenge under the O'Brien test.  391 U.S. at 377.  This

test has four prongs: *First*, the challenged regulation must be "within the constitutional power of

government;" *second*, it must "further[] an important or substantial government interest;" *third*, this interest must be "unrelated to the suppression of free expression;" and *fourth*, the incidental restriction on First Amendment freedoms must be "no greater than is essential to the furtherance of that interest." Id. Caputo does not dispute that § 1752(a)(1) passes the test's first three prongs. Def.'s Reply Govt.'s Opp'n 3-4. He does argue that the statue violates the fourth prong. In doing so, he claims that the statute "would prevent all fence jumping protests seeking to illustrate that the fence was inadequate … [e]ven a jump that has nothing to do with endangering the President." Id. Caputo is correct that § 1752(a)(1) categorically bars this peculiar form of expression. But such a restriction is easily justified, given the Government's profound interest in protecting the White House complex, the President, and the functionality of the executive branch. Section 1752(a)(1) thus satisfies the O'Brien test for regulations of noncommunicative conduct that incidentally affect expression. Accordingly, the Court rejects Caputo's as-applied challenge.

C.     Vagueness Challenge

Finally, the Court turns to Caputo's vagueness challenge. Def.'s Mot. Dismiss 13. Vagueness doctrine is a product of the Due Process Clause of the Fifth Amendment, not the First Amendment. Williams, 553 U.S. 285, 304 (2008). A criminal statute is unconstitutionally vague if it is written so imprecisely "that it fails to give ordinary people fair notice of the conduct it prohibits," or is "so standardless that it invites arbitrary enforcement." Johnson v. United States, 135 S.Ct. 2551, 2556 (2015). These concerns are more sensitive in the First Amendment context, where "a more stringent vagueness test should apply." Holder v. Humanitarian Law Project, 561 U.S. 1, 19 (2010).

Section 1752(a)(1) prohibits entry into the White House or other restricted areas "without lawful authority."  Caputo contends that this phrasing, specifically, is unconstitutionally vague. Def.'s Mot. Dismiss 13.  **But** the White House's perimeter, demarcated by an imposing fence and manned by scores of Secret Service agents, unambiguously provides ordinary people with fair notice that unauthorized entry onto the grounds is unlawful.  See, e.g., United States v. Powell, 563 A.2d 1086, 1090 (D.C. 1989) ("A fence, a gate, or any other barrier which controls public access to property gives notice to persons that they do not have a legal right to enter or remain in a certain area.").  Moreover, Caputo's own words and actions undermine this argument.  He told the Secret Service officer who arrested him that "I knew I would be locked up;"  Govt.'s Opp'n 2;  left behind several letters that intended to exonerate his acquaintances for his actions; and suggested he knew he might die after scaling the fence.  Id. at 3.  Like every other reasonable person who visits the White House perimeter, Caputo was well-aware that unauthorized entry onto the grounds was illegal.  18 U.S.C. § 1752(a)(1) is thus not void for vagueness.

## IV.     Conclusion

For the foregoing reasons, the Court will deny the Defendant's motion to dismiss the Information.  A separate Order accompanies this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   August 19, 2016